IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DONNIE EARL DUCKSWORTH, TDCJ # 01872103, | § § § | |
| Petitioner, | § § | |
| VS. | § § | CIVIL ACTION NO. 3:16-CV-318 |
| LORIE DAVIS, Director, Texas Department of Criminal Justice, Correctional Institutions Division, | § § § § | |
| Respondent. | § § | |

**MEMORANDUM OPINION AND
ORDER FOR CONDITIONAL GRANT OF HABEAS CORPUS**


## Table of Contents

I.   BACKGROUND ................................................................................................ 2

  A.   Procedural Background................................................................................ 2

  B.   Factual Background .................................................................................... 3

II.   STANDARDS OF REVIEW.............................................................................. 5

  A.   Habeas Corpus ........................................................................................... 5

  B.   Summary Judgment .................................................................................... 7

  C.   Ineffective Assistance of Counsel............................................................... 8

III.   ANALYSIS...................................................................................................... 10

  A.   Ineffective Assistance of Counsel:  Jury Instructions ................................ 10

    1.   Jury Instruction on Robbery ................................................................ 10

    2.   Deficient Performance ........................................................................ 16

    3.   Prejudice ............................................................................................ 21

    4.   2254 Review ....................................................................................... 24

      a.   Deficient Performance ................................................................. 25

      b.   Prejudice ..................................................................................... 27

    B.    Ineffective Assistance of Counsel:  Failure to Strike Juror ............................................... 31

IV.    <u>CONCLUSION</u>................................................................................................. 34

Petitioner Donnie Earl Ducksworth filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1) raising two claims of ineffective assistance of counsel. Respondent filed a Motion for Summary Judgment (Dkt. 8), to which Ducksworth has responded (Dkt. 9). Respondent also filed the relevant state court records (Dkt. 7). After reviewing all of the parties' filings, the record, and the applicable law, the Court concludes that the writ of habeas corpus should be **conditionally granted** on one claim and that summary judgment should be **granted** to Respondent on the second claim.

## I.    BACKGROUND

### A.    Procedural Background

On December 13, 2012, Ducksworth was charged by indictment with two counts of aggravated robbery. He was tried by jury before Judge W. Edwin Denman in the 412th District Court of Brazoria County, Texas, Cause No. 69305. Faye Gordon, appointed counsel, represented Ducksworth at trial. On June 26, 2013, the jury found Ducksworth guilty on both counts. Ducksworth pleaded true to the habitual offender enhancement allegations, and on June 27, 2013, the jury sentenced him to sixty years imprisonment on each count, to be served concurrently.[1]

---

[1]    *See* State Habeas Corpus Record, WR-53,239-02 ("SHCR-02"), at 5-7. The state habeas corpus record was filed on this Court's docket as Dkt. 7-17, 7-18, 7-19, 7-20 & 7-21. In this Memorandum, the Court's page references to SCHR-02 refer to the documents' bates-stamped numbers at the bottom center of each page.

The First Court of Appeals of Texas affirmed Ducksworth's conviction on June 10, 2014, in an unpublished opinion. *Ducksworth v. State*, 01-13-00616-CR, 2014 WL 2582895 (Tex. App.—Hou. [1st Dist.] 2014, no pet.). Ducksworth did not seek discretionary review.

On November 10, 2014, Ducksworth filed a petition for state habeas relief. The trial court held an evidentiary hearing on January 23, 2015 (SHCR-02, at 178-269 ("Evidentiary Hearing")). On April 2, 2015, the court entered Findings of Fact and Conclusions of Law (*id.* at 292-307 ("FFCL")). The Texas Court of Criminal Appeals denied relief without written order on January 20, 2016 (Dkt. 7-17).

Ducksworth timely filed his habeas corpus petition in this Court on June 3, 2016.

**B.** **Factual Background**

On direct appeal, the First Court of Appeals summarized the relevant facts as follows:

> Ducksworth and his wife were arrested after two construction workers notified police that the two had stolen metal pipe from their construction site. The two men, Jose and Ruben Vera, who are brothers, testified that Ducksworth and his wife entered a road-side construction zone in Pearland and began loading metal pipe onto Ducksworth's truck. The Veras testified that they approached Ducksworth and told him that the pipe was not construction debris and that he could not take it. In response, Ducksworth pulled a knife partially out of his pocket, threatened them, and left the construction site with the pipe. The Veras called the police, and Ducksworth and his wife were stopped within a few minutes. During the stop, the police found pipe and a knife in the bed of Ducksworth's truck. Both were arrested and charged with aggravated robbery.
>
> At trial, Ducksworth's wife, Connie Peters, testified that she had understood that a third construction worker had given Ducksworth permission to take the pipe before the Veras intervened. She also testified about the knife that the police found in the bed of the truck. She stated that

they kept the knife in the cab of the truck and used it to operate the truck's broken ignition. Peters testified that the knife remained in the cab of the truck throughout the confrontation with the Veras, meaning that Ducksworth could not have used it to threaten the Veras as they contended. She explained that the knife was in the bed of the truck when the police arrived only because they used it to help secure the pipe for transport after taking it from the construction site. Ducksworth did not testify.

The jury was asked whether Ducksworth committed aggravated robbery. The jury was not instructed on any lesser-included offenses. The jury found Ducksworth guilty of aggravated robbery and, taking into account two enhancement paragraphs, sentenced him to 60 years' imprisonment.

*Ducksworth*, 2014 WL 2582895, at *1.

Faye Gordon, appointed counsel for Ducksworth, did not request a jury instruction on robbery or any other lesser included offense of aggravated robbery. She initially requested, but later withdrew, an instruction on theft (FFCL, at 296-97 & 304-05, Findings No. 29, 30, 33 & 66). When the case was submitted to the jury, the jury's only options for verdict were acquittal or conviction for aggravated robbery.

After his conviction and sentence were affirmed on direct appeal, Ducksworth filed a state habeas petition claiming that Gordon had rendered constitutionally ineffective assistance of counsel at his trial when she failed to request a robbery instruction. He also claimed that she was ineffective because she used two of her peremptory strikes on jurors already challenged for cause, thus wasting the strikes, and allowed a biased juror to be seated without challenging him for cause or peremptorily. Gordon filed an affidavit and testified at the state habeas court's evidentiary hearing.

The state habeas court entered Findings of Fact and Conclusions of Law denying habeas relief. *See* FFCL, at 306, Conclusion No. 1 ("Trial counsel was not ineffective in

failing to use a peremptory strike to remove Venireman 10, Jason Mahin"); *id*. Conclusion No. 3 ("Trial counsel was not ineffective for failing to request a lesser included jury charge for Robbery").[2]  The Court of Criminal Appeals denied relief without written order.

## II.   STANDARDS OF REVIEW

### A.   Habeas Corpus

Ducksworth's federal habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521 U.S. 320 (1997).  The intent of the AEDPA is to avoid federal habeas "retrials" and "ensure that state-court convictions are given effect to the extent possible under [the] law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The provisions of Section 2254(d) create a highly deferential standard, thereby demanding that state court decisions be given the benefit of the doubt. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002).   Review of a state court decision is limited to the record that was before the state court that adjudicated the claim on its merits.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).   A federal court cannot grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication:

---

[2]    The court also denied a third claim of ineffective assistance.  *See id*. Conclusion No. 2 ("Trial counsel was not ineffective in failing to file a motion in limine and object to the State's cross examination which elicited that [Ducksworth] lost his job because his ex-girlfriend had filed charges on him, and to the State's cross examination of defense witness Connie Peters that she had lost her job for multiple reasons").  Ducksworth's federal petition does not raise this issue.

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012). Questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1); questions of fact are reviewed under § 2254(d)(2). *Martinez v. Caldwell*, 644 F.3d 238, 241-42 (5th Cir. 2011).

A state court decision is contrary to clearly established law if the decision "applies a rule that contradicts the governing law set forth" by the Supreme Court or if the state court "confronts a set of facts that are materially indistinguishable" from the Supreme Court precedent and decides the case differently. *Early v. Packard*, 537 U.S. 3, 8 (2002). A state court unreasonably applies federal law if the court "identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). To be an unreasonable application of federal law, the state court decision must be objectively unreasonable and more than simply incorrect or erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Cobb*, 682 F.3d at 373.

The AEDPA grants great deference to state determinations of factual issues. In reviewing a federal habeas petition, the court must presume that a factual determination made by the state court is correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## B. Summary Judgment

A court may grant summary judgment when the evidence shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32 (1986). The moving party has the responsibility of informing the court of the basis for its summary judgment motion and "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that demonstrate that there is no genuine issue of material fact. *Id.* at 323 (internal quotation marks omitted). In response, the nonmovant must go beyond the pleadings and by affidavits, depositions, answers to interrogatories, or admissions on file show that there is a genuine issue of material fact requiring resolution through a trial. *Id.* at 324. If the nonmoving party is unable to meet this burden, the motion for summary judgment will be granted.

Rule 56 of the Federal Rules of Civil Procedure "applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). The rule, however, only applies to the extent that it does not conflict with the habeas rules. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds*, *Tennard v. Dretke*, 524 U.S. 274 (2004). Generally, in ruling on a motion for summary judgment, the court resolves any doubts and draws any inferences in favor of the nonmoving party, *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999), but 28 U.S.C. § 2254(e)(1) commands that factual findings of the state court are to be presumed correct. Thus, 28 U.S.C. § 2254(e)(1) overrides the general summary judgment rule. *Smith*, 311

F.3d at 668. The petitioner is required to rebut the presumption of correctness by clear and convincing evidence. *Id.*; 28 U.S.C. § 2254(e)(1).

### C.     Ineffective Assistance of Counsel

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a criminal defendant claiming ineffective assistance of counsel must show that defense counsel rendered deficient performance and that the defendant was prejudiced.

> To demonstrate deficient performance, the defendant must show that, in light of the circumstances as they appeared at the time of the conduct, "counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms."  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." . . . .

> To demonstrate prejudice under *Strickland*, [the defendant] must show that counsel's deficient performance was "so serious as to deprive him of a fair trial, a trial whose result is reliable."  This requires the showing of a reasonable probability that but for counsel's deficiencies, the result of the proceeding would have been different.

*Rhoades v. Davis*, 852 F.3d 422, 431-32 (5th Cir. 2017) (quoting *Strickland*, 466 U.S. at 687-89, 694).  *Strickland* defines a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  This requires a "substantial, not just conceivable, likelihood of a different result.*" Pinholster*, 563 U.S. at 189 (internal citation and quotation marks omitted).  The petitioner's burden to show a "reasonable probability" of changed outcome is less than a preponderance:

> The question is not whether the defendant would more likely than not have received a different verdict . . . , but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995).[3]  The prejudice inquiry is focused on the "fairness of the trial and the reliability of the . . . verdict in light of any errors made by counsel, and not solely the outcome of the case."  *White v. Thaler*, 610 F.3d 890, 912 (5th Cir. 2010) (internal citations and quotation marks omitted).

Review of counsel's performance is deferential, and counsel enjoy a strong presumption that their conduct is within the "wide range" of the bounds of professional norms.  *Strickland*, 466 U.S. at 689.  A petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  Any "strategic decisions" made by trial counsel "must be given a strong degree of deference."  *Rhoades*, 852 F.3d at 432.

On habeas review, when a state court has adjudicated a claim of ineffective assistance of counsel on the merits, the petitioner bears an especially heavy burden.  The question is not whether the state court's application of *Strickland* was incorrect, but rather whether it was unreasonable.

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's

---

[3]  *See United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004) ("The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different"); *Nix v. Whiteside,* 475 U.S. 157, 175 (1986) ("[A] defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under *Strickland* "); *Strickland*, 466 U.S. at 693 ("W]e believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case").

actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105 (internal citations and quotation marks omitted). *See Trottie v. Stephens*, 720 F.3d 231, 240-41 (5th Cir. 2013) ("'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable'" (quoting *Richter,* 562 U.S. at 102)).

## III.   ANALYSIS

### A.   Ineffective Assistance of Counsel:  Jury Instructions

Ducksworth claims that Gordon should have requested a jury instruction on robbery, and that her failure to do so rendered her constitutionally ineffective.  He presented this claim to the state habeas court, which denied his claim on the merits.

### 1.   Jury Instruction on Robbery

Ducksworth was convicted of two counts of aggravated robbery.  A person commits "aggravated robbery" if "he commits robbery as defined in Section 29.02, ***and*** he . . . .  uses or exhibits a deadly weapon."  TEX. PENAL CODE § 29.03(a)(2) (emphasis added).  *See Sweed v. State*, 351 S.W.3d 63, 69 (Tex. Crim. App. 2011).   To convict Ducksworth of aggravated robbery, the State was required to prove that Ducksworth committed "robbery," which a person commits if "in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death."  TEX.

PENAL CODE § 29.02(a).[4]  The State also was required to prove beyond a reasonable doubt that Ducksworth used or exhibited the knife he carried as a "deadly weapon."

Under Texas law, a knife is not a deadly weapon *per se*.  *Brown v. State*, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986).  Moreover, "[m]ere possession" of a deadly weapon is not equated with "using" or "exhibiting" the weapon, as required to prove aggravated robbery.  *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (citing *Patterson v. State,* 769 S.W.2d 938, 941 (Tex. Crim. App. 1989)).  Rather, the prosecution must prove beyond a reasonable doubt that "the knife alleged is capable of causing serious bodily injury or death in the manner of its use or intended use."  *Brown*, 716 S.W.2d at 946 (emphasis deleted).  *See Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008) (citing TEX. PENAL CODE § 1.07(a)(17)).  Several factors are relevant, including the physical distance between the defendant and victim, and more specifically whether the victim was within the defendant's reach;[5] whether the defendant made verbal

---

[4]    Robbery is a lesser included offense of aggravated robbery because it is "established by proof of . . . less than all the facts required to establish the commission of [aggravated robbery]." TEX. CRIM. PROC. CODE § 37.09(1).  Aggravated robbery is a first degree felony, TEX. PENAL CODE § 29.03(b), and robbery is a second degree felony, *id*. §29.02(b).  Theft, which is a lesser included offense of robbery and aggravated robbery, is the unlawful appropriation of property "with intent to deprive the owner of property."  *Id.* § 31.03(a).  "Appropriation of property is unlawful if . . . it is without the owner's effective consent."  *Id.* § 31.03(b)(1).

[5]    *Tisdale v. State*, 686 S.W.2d 110, 115 (Tex. Crim. App. 1984) (on rehearing en banc) (evidence sufficient for rational trier of fact to find beyond a reasonable doubt that knife was a deadly weapon where, among other things, defendant was "within reach" of the victim); *Nash v. State*, 115 S.W.3d 136, 140 (Tex. App.–Texarkana 2003, pet. ref'd) (noting relevance of "physical proximity between the victim and the object").

threats;[6] and whether the knife was exposed during the offense.[7] The "determining factor is that the deadly weapon was 'used' *in facilitating* the underlying crime." *McCain*, 22 S.W.3d at 503 (emphasis original).

Ducksworth argues that Gordon should have requested a jury instruction on the lesser included offense of robbery. If "some evidence from any source" raised a fact issue on whether the defendant was guilty only of a lesser included offense, the defendant is entitled to the instruction. *See Cavazos v. State*, 382 S.W.3d 377, 383 (Tex. Crim. App. 2012); *Stadt v. State*, 182 S.W.3d 360, 363 (Tex. Crim. App. 2005). The evidence relevant to the instruction must be sufficient to allow a jury to "rationally conclude" that the defendant was guilty only of the lesser offense. *See Wesbrook v. State*, 29 S.W.3d 103, 113-14 (Tex. Crim. App. 2000). Even if the evidence supporting conviction on the lesser offense is "weak, impeached, or contradicted," the defendant is entitled to the instruction. *Cavazos*, 382 S.W.3d at 383.

> Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge. Although this threshold showing is low, it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted. Accordingly, we have

---

[6]    *English v. State*, 647 S.W.2d 667, 669 (Tex. Crim App. 1983) ("Words spoken by the accused during the commission of the offense may be considered in determining whether a knife or other weapon is a deadly one"); *Nash*, 115 S.W.3d at 140 ("the threats or words used by the assailant" are relevant to whether an object was a deadly weapon (citing *Williams v. State,* 575 S.W.2d 30 (Tex. Crim. App. [Panel Op.] 1979))).

[7]    *McCain*, 22 S.W.3d at 503 ("Had the knife been completely concealed by appellant's clothing, additional facts would have been needed to establish that the butcher knife was used. But the knife was partially exposed, and from that exposure, the factfinder could rationally conclude that the knife was exhibited during the criminal transaction . . .").

stated that the standard may be satisfied if some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations.

*Sweed*, 351 S.W.3d at 68 (Tex. Crim. App. 2011) (internal citations and quotation marks omitted).[8]

In this case, the state habeas court made multiple findings relevant to whether Ducksworth used or exhibited a knife as a deadly weapon to facilitate the transaction:

14. When Jose [Vera] took out his phone, [Ducksworth] pulled a knife partially out of his pocket and showed it to him (3 R.R. 32) and said, "Don't call the police. I'm going to hurt you." (3 R.R. 30, 33, 66-67). [Ducksworth] was angry and mad. (3 R.R. 32, 33).

15. Jose [Vera], who was three to five feet from [Ducksworth], could see the knife and described it as being seven to eight inches long, and he moved back. (3 R.R. 67).

16. Ruben [Vera] approached the truck to remove the tape from the rear license plate (3 R.R. 67), and [Ducksworth] showed Ruben the knife. (3 R.R. 45).

17. [Ducksworth] told Ruben [Vera] not to touch the truck, pulled the knife "halfway" out of his pocket, and said that he would hurt them if they got close. (3 R.R. 32, 34-35, 67-68).

18. The Vera brothers felt threatened and moved back because [Ducksworth] was a "big guy" and he was mad but [Ducksworth] did not pull the knife all the way out, wave it, or try to attack them. (3 R.R. 35, 44-45, 68-69, 86; 4 R.R. 83).

19. When [Ducksworth] showed Ruben [Vera] the knife, he started to walk toward Ruben but Ruben moved back. (4 R.R. 69).

---

[8] In *Sweed*, the Texas CCA concluded that the defendant was entitled to an instruction on theft because the evidence raised a fact question as to whether defendant pulled a knife during or after commission of the criminal transaction, and therefore there was "more than a scintilla of evidence from which the jury could have reasonably determined that theft is a valid, rational alternative to aggravated robbery." *Id.* at 69.

20. [Ducksworth] entered the truck, and the female [Peters] drove away. (3 R.R. 33, 39, 70).

21. Jose [Vera] called the police (3 R.R. 33), but he would not have called police if [Ducksworth] had not shown the knife. (3 R.R. 42).

22. Pearland Police Department officer Gary Gothard heard a call regarding a robbery in progress. (4 R.R. 37, 40). Shortly thereafter, he detained a black man in a parking lot who was in the bed of a truck containing pipe. (4 R.R. 47, 51). A kitchen knife with a four-and-one-half inch blade was in the bed of the truck. (4 R.R. 17-18, 21-22, 51-53; 6 R.R. SX 3). The knife was capable of causing serious bodily injury or death. (4 R.R. 22, 53).

(FFCL, at 294-95, Findings No. 14-22). According to the state habeas court's findings, therefore, Ducksworth was never within physical reach of the Veras (Findings No. 15 & 19) and never pulled his knife all the way out or tried to attack them (Findings No. 14 & 18), but did show the knife and make a verbal threat (Findings No. 14, 15, 17 & 21). These factors are relevant under Texas law to whether Ducksworth used or exhibited his knife as a deadly weapon. *See McCain*, 22 S.W.3d at 503; *Tisdale*, 686 S.W.2d at 115.

Under the circumstances of this case, because "some evidence in the record" would have permitted the jury to find Ducksworth guilty only of robbery, Ducksworth was entitled to the robbery instruction. *See Cavazos*, 382 S.W.3d at 383. Even if the evidence at trial was sufficient to sustain a conviction for aggravated robbery, the trial court would have erred by refusing the robbery instruction if Gordon had requested it.[9]

---

[9] *See, e.g., Chavez v. State*, 740 S.W.2d 21, 22-23 (Tex. App.–El Paso 1987, no pet.) (finding error because defendant was entitled to an instruction on robbery due to "factual issues as to the deadly character of the knife," even though the evidence was sufficient to establish use of a knife as a deadly weapon and thus to sustain conviction for aggravated robbery); *Nash*, 115
(continued on next page …)

As Gordon testified in state habeas proceedings, a "rational jury could have believed that Mr. Ducksworth took the pipe, verbally threatened the complainants, but . . . . [had] not displayed the knife," and thus committed only robbery (Evidentiary Hearing, at 215). Gordon further agreed it was possible that the jury alternatively might have believed that Ducksworth took the pipe and pulled the knife partially out of his pocket, but did not use or exhibit the knife "as a deadly weapon where it remained in his pocket and [the Veras] were too far away to be injured by it" (*id*.). Moreover, she articulated the argument she could have made if the jury had been instructed on robbery:

> The possible argument could have been that my client believed he had consent to take the pipe. When the persons [Veras] approached him he did not make any advancements toward them in any type of threatening manner. So therefore, he never actually exhibited the weapon by pulling it out of his shirt or showing it to them.

(*id*. at 242-43). Gordon conceded that she could have argued that "even if [the jury] believed every word the State's witnesses said that at least it demonstrated Robbery instead of Aggravated Robbery," because "there was reasonable doubt as to whether he used or exhibited a deadly weapon during commission of the offense" (*id*. at 243). *See* FFCL at 297, Finding No. 36 ("Ms. Gordon felt the evidence was strong that he did not exhibit a deadly weapon").

---

S.W.3d at 139 (because there was "some evidence that Nash was either not carrying any item that might be considered a weapon, or that the item he was carrying was not a *deadly* weapon . . . we must conclude that robbery was a rational alternative which could have been found by the jury and that the trial court therefore erred by not charging the jury on the lesser included offense"); *Jones v. State*, 921 S.W.2d 361, 364–65 (Tex. App.–Hou. [1st Dist.] 1996, pet. ref'd) (trial court gave instructions on aggravated robbery and theft but not robbery; trial court erred in refusing robbery instruction because the instruction would have allowed conviction for robbery if jury believed that victims were "threatened or placed in fear of injury" but had reasonable doubt, based on evidence at trial, about the presence of a gun).

Under Texas law, Ducksworth was entitled to the robbery instruction.

### 2. Deficient Performance

Respondent argues that, despite Gordon's failure to request the robbery instruction, her performance was not deficient under *Strickland*. *Strickland* standards are highly deferential, especially when counsel makes a strategic decision. A "strategic" decision by counsel is one that "is expected, on the basis of sound legal reasoning, to yield some benefit or avoid some harm to the defense." *St. Aubin v. Quarterman*, 470 F.3d 1096, 1103 (5th Cir. 2006) (internal quotation marks and citations omitted). "'Strategic choices made *after* thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rhoades*, 852 F.3d at 434 (quoting *Strickland*, 466 U.S. at 690)) (alteration omitted) (emphasis added). However, "if a purportedly tactical decision is not preceded by a reasonable investigation, then it is not sufficiently informed and not entitled to the deference typically afforded counsel's [strategic] choices." *Escamilla v. Stephens*, 749 F.3d 380, 392 (5th Cir. 2014); *see Anderson v. Johnson*, 338 F.3d 382, 392 (5th Cir. 2003) (*Strickland* does not require deference to decisions that are "uninformed by an adequate investigation into the controlling facts and law") (internal quotation marks and alterations omitted). The Fifth Circuit has held that the courts are "not required to condone unreasonable decisions parading under the umbrella of strategy." *Richards v. Quarterman*, 566 F.3d 553, 567 (5th Cir. 2009) (internal citation and quotation marks omitted).

Respondent argues that Gordon's strategy at trial was to base her defense on theft, and that requesting a robbery instruction would have been inconsistent with the evidence

of theft.   Before trial, Ducksworth had instructed Gordon to pursue theft rather than robbery.   *See* Evidentiary Hearing, at 220 ("[Ducksworth] said this was not a Robbery case and that we were to pursue theft.").[10]   However, Gordon then withdrew the theft instruction before the case was submitted to the jury.   At that point, Ducksworth's circumstances had materially changed, because the jury did not have the option to find him guilty of theft and, in fact, the only offense before the jury was aggravated robbery. Nevertheless, according to Gordon's testimony, she did not consider giving her client updated advice:

> Q.   [Y]ou were constructing your whole defense on theft, weren't you?
>
> A.   Yes.
>
> Q.   And the situation changed when you withdrew the request, didn't it?
>
> A.   Yep.
>
> Q.   So . . . that would have been the time to sit down with your client and say, hey pal, different ball game.   We need to request an instruction on Robbery instruction because—and then explained it to him.   You could have done that, couldn't you?
>
> A.   I could have.
>
> Q.   You just didn't think about it, did you?
>
> A.   No, I did not.

---

[10]   Gordon filed an affidavit on December 2, 2014, in connection with state habeas proceedings, that also relied on Ducksworth's instructions to her.   *See* SHCR-02, at 168-69 ("Gordon Affidavit").   Gordon stated that "Mr. Ducksworth insisted that the theory of this case was theft" and that "it was not robbery, because he had permission to take the pipe" (*id*. at 169). She further stated, "To request robbery as a lesser included offense in the jury charge would have been inconsistent with our evidence primary theory [sic] of theft" (*id*.).

(Evidentiary Hearing, at 244-45).[11] In fact, Gordon continued to argue theft to the jury even after the instruction was withdrawn (FFCL, at 297, Finding No. 36 (citing 4 R.R. 150); Evidentiary Hearing, at 219).

Based on the evidence in the state court record, there were strong strategic advantages, and no identified disadvantages, to requesting a robbery instruction. *See St. Aubin*, 470 F.3d at 1103.[12] If the jury had been instructed on robbery, Gordon could have argued that there was reasonable doubt as to whether Ducksworth had exhibited a deadly weapon because he never removed the knife from his pocket and the Veras were not within his reach. Gordon's continued adherence to a theory of theft, even after the theory was unavailable to the jury, further indicate that she entirely failed to exercise her professional judgment. *See Richards*, 566 F.3d at 569 (finding deficient performance, and the absence of a strategic decision, for counsel's failure to request a lesser included offense instruction). Gordon's failure to request the robbery instruction—or even to

---

[11]     *See* FFCL, at 304-05, Finding No. 66 (state habeas court found that "Ms. Gordon testified that she and [Ducksworth] had talked about the lesser [included] offense of Robbery ***before*** trial, but [Ducksworth] did not want it submitted" and that "Ms. Gordon did not discuss the parole eligibility issue ***after*** the Court would not allow a lesser included issue of Theft") (emphasis added).

[12]     Respondent defends Gordon's performance by citing to the state habeas court's finding that a robbery instruction would have "lessened" Ducksworth's available defenses. *See* Motion (Dkt. 8), at 16 (citing FFCL, at 304-05, Finding No. 66). Respondent's briefing offers no further explanation regarding how Ducksworth's defenses would have been lessened, and the Court is aware of none. Indeed, if the jury had been charged with robbery, Gordon could have continued to argue for full acquittal, *i.e.*, that Ducksworth was not guilty of both robbery and aggravated robbery. The argument regarding "lessened" defenses therefore cannot suffice in this case as a strategic justification. *See Richards*, 566 F.3d at 569-70 (rejecting trial counsel's contention that she did not feel the jury would convict of murder and did not want to give the jury the option of convicting of the lesser offense" as a "'*post-hoc* rationalization' rather than a genuine account of [counsel's] decision-making process").

discuss the issue with her client—was not based on a reasonable investigation into the facts or the law and, under *Strickland*, was not entitled to the deference afforded to counsel's strategic decisions. *See Escamilla*, 749 F.3d at 392; *Anderson*, 338 F.3d at 392.

To the extent Respondent relies upon Ducksworth's instructions to justify Gordon's performance, the argument fails. In most cases, an attorney who acts on a client's instructions does not provide ineffective assistance. *See Wood v. Quarterman*, 491 F.3d 196, 203 ("Neither the Supreme Court nor this court has ever held that a lawyer provides ineffective assistance by complying with the client's clear and unambiguous instructions not to present evidence"). However, cases applying this rule rely on the client making an ***informed*** decision, with professional assistance from the attorney. *See Autry v. McKaskle*, 727 F.2d 358, 362 (5th Cir. 1984) (a lawyer is ethically bound to follow his client's "knowing" choices); *Strickland*, 466 U.S. at 691 ("Counsel's actions are usually based, quite properly, on ***informed*** strategic choices made by the defendant") (emphasis added).[13] In this case, Ducksworth's instruction to Gordon to pursue theft was given before trial, and before the theft instruction was withdrawn. Even assuming that Ducksworth's pre-trial decision to forego a robbery instruction was fully informed when

---

[13]    *See e.g.*, *McFarland v. State*, 845 S.W.2d 824, 847-48 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994) (counsel's failure to call defendant's mother to testify about available mitigating evidence, in particular, childhood abuse, was not deficient performance; defendant testified, outside presence of jury, that he refused to allow his attorney to call his mother to the stand and understood the legal ramifications of his decision); *Duncan v. State*, 717 S.W.2d 345, 348 (Tex. Crim. App. 1986) (defendant who preempted his attorney's strategy when, against the advice of counsel, he took the stand and made a judicial confession, had failed to demonstrate that his counsel rendered ineffective assistance).

made, the decision was no longer fully informed once the theft instruction was withdrawn. At that point, as the state habeas court found, Gordon did not give her client updated legal advice (FFCL, at 304, Finding No. 66). Her performance therefore fell below an objective standard of reasonableness.[14]

In sum, no sound strategy justified Gordon's failure to request the robbery instruction. Gordon did not make an adequate investigation in the facts and law, and did not rely on an informed decision of her client. Rather, she continued to argue a stale theory of theft that was unavailable to the jury. In similar cases, the courts have found counsel constitutionally deficient. *See Richards*, 566 F.3d at 569-70 (finding deficient performance because counsel had not requested a lesser included instruction raised by the evidence and apparently "misunderstood the law," thus falling below an objective standard of reasonableness); *Vasquez v. State*, 830 S.W.2d 948, 951 (Tex. Crim. App. 1992) (finding deficient performance because "[c]ounsel should have recognized that appellant's testimony was sufficient to raise the defense," because "appellant had nothing to lose by requesting a defensive instruction," and because "[u]nder the facts of this case, it would have been error for the trial court to refuse such an instruction, had one been requested"); *Waddell v. State*, 918 S.W.2d 91, 94-95 (Tex. App.–Austin 1996, no pet.)

---

[14]    The question in the deficient performance inquiry is not what **Ducksworth** would ultimately have chosen if fully informed by Gordon, *i.e.,* whether he would have rejected a robbery instruction if he fully understood the strategic advantages. Rather, the focus is whether **counsel's** performance fell "below an objective standard of reasonableness" as measured by "prevailing professional norms." *See Rhoades*, 852 F.3d at 431-32. *See also* Evidentiary Hearing, at 223 (Gordon testified that she did not blame her client for her failure to request a robbery instruction).

(counsel rendered deficient performance because counsel failed to request an instruction on the lesser included offense of trespass and thus "the jury was not given the opportunity to evaluate the evidence as it relates to the lesser offense").

Gordon's performance was deficient and "fell below an objective standard of reasonableness as measured by prevailing professional norms." *See Rhoades*, 852 F.3d at 431-32 (internal citation and quotation marks omitted).

### 3. Prejudice

To demonstrate prejudice under *Strickland*, a defendant must show that counsel's deficient performance was "so serious as to deprive him of a fair trial, a trial whose result is reliable." *Rhoades*, 852 F.3d at 432 (internal citation and quotation marks omitted). This requires the showing of a "reasonable probability" that but for counsel's deficiencies, the result of the proceeding would have been different. *Id*. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Escamilla*, 749 F.3d at 388 (quoting *Strickland*, 466 U.S. at 694). The reasonable probability standard does not require Ducksworth to show by a preponderance of the evidence that the verdict would have been different if he had received the robbery instruction but rather that, given Gordon's error, he did not receive a "fair trial, understood as a trial resulting in verdict worthy of confidence." *Kyles*, 514 U.S. at 434. *See Dominguez Benitez*, 542 U.S. at 83 n.9; *Nix,* 475 U.S. at 175 *Strickland*, 466 U.S. at 693-94; *White*, 610 F.3d at 912.

In this case, Ducksworth was prejudiced by the significant difference in parole eligibility between the two offenses. As the state habeas court found, Ducksworth is

required to serve thirty years for aggravated robbery before he is eligible for parole but, if he had been convicted of robbery, would have been required to serve only seven-and-a-half years before parole eligibility. *See* FFCL, at 304, Finding No. 66 (Petitioner "***correctly*** point[ed] out the difference in parole eligibility for the two offenses") (emphasis added); *id*. ("Parole implications are important issues that counsel should discuss with their clients."). Texas courts have recognized that a sentencing enhancement prejudices the defendant. *See Williams v. State*, 314 S.W.3d 45, 53 (Tex. App.–Tyler, 2010, pet. ref'd) ("Harm exists when the penalty imposed for the charged offense exceeds the potential penalty for the lesser included offense" (citing *Bignall v. State*, 899 S.W.2d 282, 284 (Tex. App.–Hou. [14th Dist.] 1995, no pet.))); *Waddell*, 918 S.W.2d at 915 n.4 (counsel's failure to request a lesser included instruction was "particularly egregious" because burglary was a felony for which enhanced punishment was available, whereas enhanced punishment would not have been available if defendant were convicted of a misdemeanor offense such as criminal trespass). Nevertheless, Gordon conceded that she did not inform Ducksworth of the sentencing discrepancy,[15] and Ducksworth later stated that he was unaware of the legal risk he took.[16] The significant difference in parole eligibility establishes prejudice.

---

[15] *See* Evidentiary Hearing, at 219-20 (Gordon testified that it did not "occur to [her]," after she knew Ducksworth would not receive an instruction on theft, that "prudence would dictate that [she] request a charge on Robbery to give the a [sic] jury a basis" to impose a less severe penalty).

[16] Ducksworth filed a declaration in state habeas proceedings on December 24, 2014. *See* SHCR-02, at 308-09 ("Ducksworth Declaration"). His declaration states, "Had Ms. Gordon explained that I would have to serve 50 percent of the sentence up to 30 years before becoming
(continued on next page …)

In addition, Ducksworth was prejudiced because, although the evidence raised the issue of robbery, the only options available to his jury were aggravated robbery or acquittal. In *Beck v. Alabama*, the Supreme Court explained that, although a lesser included offense instruction had developed as an aid to the prosecution "in cases in which the proof failed to establish some element of the crime charged," the instruction also benefits the defendant "because it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal." *Beck v. Alabama*, 447 U.S. 625, 633 (1980). In fact, "providing the jury with the 'third option' of convicting on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard." *Id.* at 634.

> [I]f the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of ***some*** offense, the jury is likely to resolve its doubts in favor of conviction.

*Id.* (internal quotation marks and citation omitted) (emphasis original). When instructions on a lesser included offense are not given, there is a "possibility that a jury, believing the defendant to have committed some crime but given only the option to convict him of a greater offense, may have chosen to find him guilty of that greater

---

parole eligible on a conviction for aggravated robbery but only one-fourth of the sentence (and much less with good time credit) before becoming eligible for parole on a sentence for robbery, I would have told her to request a jury instruction on robbery." *Id.* at 309.

offense, rather than to acquit him altogether, even though it had a reasonable doubt he really committed the greater offense." *Saunders v. State*, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995).[17] Without a robbery instruction, the only options available to the jury were to acquit Ducksworth of all charges or convict him of aggravated robbery. The jury convicted him and imposed a sentence of sixty years, making Ducksworth ineligible for parole for thirty years.

A robbery instruction would have given the Ducksworth's jury a vehicle for reasonable doubt as to whether Ducksworth used or exhibited a deadly weapon to facilitate the offense. The sentencing difference was significant. Under *Strickland*, there is a "reasonable probability" that, if Gordon had requested the robbery instruction, the result of the trial would have been different. *See Rhoades*, 852 F.3d at 432.

Because Ducksworth was prejudiced by Gordon's deficient performance, he has shown that Gordon was constitutionally ineffective.

### 4. 2254 Review

---

[17]    *See Villa v. State*, 417 S.W.3d 455, 464 (Tex. Crim. App. 2013) ("[T]he jury in the present case was precluded from giving effect to the medical-care defense as a direct result of trial counsel's failure to request an instruction on the issue. . . . [T]hat failure in itself undermines confidence in the outcome of the trial and is sufficient to find a reasonable probability that the result would have been different had the medical-care defensive instruction been requested and given.  . . . [O]ur confidence in the outcome of this trial is undermined, and both prongs of the *Strickland* test have been satisfied.") (granting relief under *Strickland*); *Vasquez*, 830 S.W.2d at 951 ("Because the evidence did raise the defensive issue of necessity, and because appellant's counsel failed to request a jury instruction on the issue, the jury was precluded from giving effect to appellant's defense. That in itself undermines our confidence in the conviction sufficiently to convince us that the result of the trial might have been different had the instruction been requested and given.") (granting relief under *Strickland*).

The remaining question before this Court is whether the state court's determination was "contrary to, or involved an unreasonable application of" *Strickland*, 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). The state habeas court issued one Conclusion of Law relevant to Ducksworth's claim that Gordon rendered ineffective assistance regarding jury instructions: "Trial counsel was not ineffective for failing to request a lesser included jury charge for Robbery" (FFCL, at 306, Conclusion No. 3). The court did not explicitly address the two *Strickland* prongs, therefore implicitly determining that (1) Gordon's performance was not deficient, *i.e.*, did not fall below an objective standard of reasonableness and (2) Ducksworth was not prejudiced by her failure to request a robbery instruction.

Habeas review is highly deferential, and doubly deferential when reviewing an ineffective assistance claim. *Pinholster*, 563 U.S. at 190 ("We take a 'highly deferential' look at counsel's performance, through the 'deferential lens of § 2254(d)'") (reversing lower courts' grant of habeas relief) (quoting *Strickland,* 466 U.S. at 689; Knowles *v. Mirzayance*, 556 U.S. 111, 1418 n. 2 (2009)); *Richter*, 562 U.S. at 105.

### a.    *Deficient Performance*

The state habeas court implicitly concluded that Gordon's performance was not deficient, and thus did not fall below an objective standard of reasonableness, when she failed to request a jury instruction on robbery. The facts of the case raised the robbery issue, and if Gordon had requested the instruction the trial court would have erred by

denying it. *See Nash*, 115 S.W.3d at 139; *Jones*, 921 S.W.2d at 364–65; *Chavez*, 740 S.W.2d at 22-23. Although Respondent argues that Gordon's decisions were justified by trial strategy, the stated strategy to pursue a theory of theft is illogical because the theft instruction had been withdrawn. The mere invocation of strategy cannot justify deference to counsel's actions. *See Anderson*, 338 F.3d at 392 (*Strickland* does not require deference to decisions that are "uninformed by an adequate investigation into the controlling facts and law") (internal quotation marks and alterations omitted). Moreover, Gordon failed even to advise her client about the strategic advantages of the robbery instruction. In short, *no* informed strategy supported Gordon's failure to request a robbery instruction or to advise her client about its significant strategic advantages. *See St. Aubin*, 470 F.3d at 1103; *Richards*, 566 F.3d at 569-70.

Given these facts, the state habeas court's determination that Gordon's performance was not deficient was an unreasonable application of Strickland to the facts of the case. *See* 28 U.S.C. § 2254(d)(1). Put differently, there is no reasonable argument supporting the state habeas court's determination that Gordon's performance satisfied *Strickland*'s deferential standard. *See Richter*, 562 U.S. at 105. The determination that Gordon's performance was not deficient was both incorrect and objectively unreasonable. *See Lockyer*, 538 U.S. at 75; *Cobb*, 682 F.3d at 373; *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable'").

### b. Prejudice

The state habeas court also implicitly determined that Ducksworth was not prejudiced by Gordon's failure to request a robbery instruction.

First, the state habeas court's determination was "contrary to" *Strickland*, warranting relief under Section 2254(d)(1), because it did not apply the *Strickland* standard for the prejudice inquiry. *Strickland* requires a court to consider whether the petitioner has shown a "***reasonable probability*** that, but for counsel's unprofessional errors, the result of the proceeding would have been different," and defines "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694 (emphasis added); *see Rhoades*, 852 F.3d at 431-32. Instead, the state habeas court repeatedly applied a different standard: whether "the outcome would have been different." *See* FFCL, at 304, Finding No. 66 ("to find that ***the outcome would have been different*** had this been discussed, the Court would have to speculate that [Ducksworth] would have wanted Robbery submitted") (emphasis added); *id*. at 305, Finding No. 67 ("Given the timeline of jury deliberations, it is the Court's opinion that the submission of the robbery charge ***would not have resulted in a different outcome***") (emphasis added); *id*., Finding No. 68 ("For this Court to find that ***the outcome would have been different*** if the Robbery charge had been submitted, the Court would have to speculate. . .") (emphasis added). The state court never recited or applied *Strickland*'s "reasonable probability" standard. Moreover, the incorrect standard articulated by the habeas court is akin to a preponderance standard, which the courts squarely have rejected. *See Dominguez Benitez*, 542 U.S. at 83 n.9; *Nix,* 475 U.S. at 175; *Strickland*, 466 U.S. at

693-94; *White*, 610 F.3d at 912. The state court's adjudication thus was contrary to *Strickland*. *See Early*, 537 U.S. at 8 (a state court decision is contrary to clearly established law if the decision "applies a rule that contradicts the governing law set forth" by the Supreme Court).

Second, the state habeas court's determination that the "outcome would [not] have been different" is severely flawed because it rests on unreasonable determinations of the "facts in light of the evidence presented in the state court proceedings." *See* 28 U.S.C. § 2254(d)(2). For example, when determining that Ducksworth was not prejudiced, the habeas court stated that a robbery instruction "would have lessened [Ducksworth's] available defenses under the charge submitted" (FFCL, at 304-05, Finding No. 66). This factual premise is inaccurate given that Gordon could have continued to argue that her client had consent to take the pipe, and to urge full acquittal of both robbery and aggravated robbery, if the robbery instruction had been submitted. The state habeas court did not explain any basis for its assertion that Ducksworth's defenses would have been "lessened." In fact, in the same finding, the habeas court summarized the defenses as follows:

> [T]he defense focused on three main points. First, that [Ducksworth] was given consent to take the material; second, that the [Ducksworth] did not use or exhibit a knife or other deadly weapon; and third, that the material was abandoned trash. There was no dispute that [Ducksworth] and Ms. Peters removed the material from the site.

(*Id.* at 304, Finding No. 66). None of these defenses would have been "lessened" or unavailable if the jury had been instructed on robbery.

In another finding, the court determined that Ducksworth had not been prejudiced because he had rejected a plea bargain. In particular, the habeas court posited that Ducksworth would have rejected a robbery instruction if properly informed by Gordon because, before trial, he had rejected a plea bargain of fourteen years.[18] However, the record reflects that Ducksworth rejected the fourteen-year plea bargain before trial, when he still was operating under Gordon's advice that he could pursue a theory of misdemeanor theft, with a sentence significantly lower than fourteen years. *See* TEX. PENAL CODE §§ 12.21, 12.22, 12.23 (misdemeanors shall be punished by fines up to $4,000 and/or confinement in jail not to exceed one year). The record further reflects that Gordon withdrew the theft instruction and therefore, by the time the jury was instructed, her prior advice to her client was stale and inaccurate. Nevertheless, Gordon did not explain the legal consequences of the withdrawn instruction to her client, nor did she explain why a robbery instruction was strategically advantageous. Ducksworth's pretrial rejection of a fourteen-year plea bargain, based on his intent to pursue a theory of theft, cannot show absence of prejudice from counsel's failure to request a robbery instruction after withdrawing the theft instruction. Therefore, to the extent the state habeas court

---

[18]  *See* FFCL, at 305, Finding No. 68 (habeas court determined that a finding that "the outcome would have been different if the Robbery charge had been submitted" would require the habeas court to "speculate" that Ducksworth would have chosen to give the jury an option to convict him for robbery "which would have as a minimum sentence twenty-five (25) years, which is eleven (11) years more than he had already rejected in a plea bargain"); *id.*, at 304-05, Finding No. 66 (acknowledging that "Gordon did not discuss the parole eligibility issue after the Court would not allow a lesser included issue" of theft but stating that Ducksworth "had already been offered a plea bargain of fourteen (14) years which he declined to accept" and that "nothing in the record [suggested] that . . . [Ducksworth] would have wanted the charge of Robbery submitted").

used the rejected plea bargain to justify Gordon's failure to inform her client of the parole differences between robbery and aggravated robbery, the court's determination is unreasonable in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(2). In addition, because *Strickland* focuses on whether counsel's performance fell below an objective standard of reasonableness, and not a client's ultimate decision, the habeas court's focus on whether Ducksworth "would have wanted the charge of Robbery submitted" (FFCL, at 304, Finding No. 66) was an unreasonable application of *Strickland*'s legal standards to the facts of the case under Section 2254(d)(1). *See Rhoades*, 852 F.3d at 431-32.

Third, the state habeas court unreasonably applied *Strickland* to the facts, and unreasonably determined the facts in light of the evidence, when it relied on the jury's timeline of deliberations to find that Ducksworth was not prejudiced. *See* 28 U.S.C. §§ 2254(d)(1) & 2254(d)(2). The court determined as follows:

> ***Given the timeline of jury deliberations, it is the Court's opinion that the submission of the robbery charge would not have resulted in a different outcome***. The jury retired to deliberate at 4:15 P.M. Some seven (7) minutes later . . . the jury requested to view the knife. Sometime after 4:39 P.M. the jury was brought into the courtroom to view the knife. At 5:02 P.M. the jury returned with the verdict. From the initial minutes of deliberation the jury's focus was on the knife. Once they had viewed the knife and returned to deliberate, the jury returned with their verdict in less than twenty (20) minutes.

(FFCL, at 305, Finding No. 67) (emphasis added). In making this determination, the court unreasonably drew an inference that, because the jury verdict was delivered twenty minutes after the jury viewed the knife, Ducksworth had not shown prejudice under *Strickland*. To the extent the court determined that viewing the knife convinced the jury

to convict Ducksworth quickly, the amount of time between the jury's knife-viewing and verdict is completely immaterial to the *Strickland* prejudice inquiry, which instead focuses the inquiry on whether the ***absence*** of the robbery instruction, to which Ducksworth was entitled, undermines confidence in the outcome.

The state habeas court's determination that Ducksworth was not prejudiced relied on an incorrect legal standard for prejudice that was contrary to *Strickland*. It further unreasonably applied *Strickland* to the facts in the record. Habeas relief therefore is warranted under Section 2254(d)(1) and Section 2254(d)(2).

Courts should dispose of a meritorious habeas petition "as law and justice require." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *see* 28 U.S.C. § 2243. The Court will grant a conditional writ of habeas corpus. Respondent must release Ducksworth from custody unless the State initiates retrial proceedings within 180 days from the date of final judgment in this Court.

### B.    Ineffective Assistance of Counsel:  Failure to Strike Juror

Ducksworth also argues that Gordon was constitutionally ineffective for failure to strike Juror Jason Mahin from the jury. At *voir dire*, Mahin made three statements that Ducksworth alleges establish bias against him: that he had been robbed eight years prior; that he believed criminals should be "punished" because "rehab" was not working, and that a defendant who had nothing to hide would take the stand to tell his side of the story (Petition, at 10-11 (citing trial record)).

Gordon did not strike Mahin for cause or peremptorily. When exercising her strikes, she used two peremptory strikes on jurors she already had successfully

challenged for cause, thus "wasting" two strikes. Ducksworth urges that Gordon should have used one of those peremptory strikes to remove Mahin.

Ducksworth correctly states that Gordon used two peremptory strikes on jurors who already had been removed. However, this in itself does not suffice to show deficient performance or prejudice under *Strickland*. Rather, Ducksworth would have to show that Gordon was deficient for failure to remove Mahin. In this case, the record as a whole supports a finding that Gordon acted within "the wide range of reasonable professional assistance" when seating Mahin as a juror. *See Rhoades*, 852 F.3d at 431-32 (reciting *Strickland* standard). Upon further *voir dire*, Mahin expanded on his answers. He stated that his past experience as a robbery victim would not cause him to "favor one side or the other," that he could "follow the law as far as the range of punishment," and that he would not require the defendant to testify because "the law is the law" (Petition, at 10-11 (citing trial record); FFCL, at 298-99, Finding 39 (citing trial record)). At the evidentiary hearing, Gordon testified that Mahin was not an objectionable juror given all his answers and her observations during *voir dire* (Evidentiary Hearing, at 228-30). She also testified that she felt she did not need to strike Gordon because he was willing to voice his opinion, that it was "not unusual" to hear persons untrained in the law state that they wanted to hear a defendant testify or wanted criminals to receive more than a "slap on the

wrist," and that she seated the best jury should could given the panel that was available to her (*id*. at 228-29).[19]

Ducksworth has not shown that Mahin was sufficiently biased that Gordon's performance "fell below an objective standard of reasonableness as measured by prevailing professional norms" when she failed to remove him. *See Romero v. Lynaugh*, 884 F.2d 871, 878 (5th Cir. 1989) (finding that counsel's handling of jury selection did not fall "outside the range of acceptable judgment" and noting that an attorney may rely on experience, intuition, and empathetic abilities that are not fully reflected in a written record). He therefore has not shown that her performance was constitutionally deficient. *See Rhoades*, 852 F.3d at 431-32.

As for prejudice, Ducksworth argues that a prejudice showing is not required because the presence of a "biased juror" constitutes structural error, relying on *Virgil v. Dretke*, 446 F.3d 598, 613-14 (5th Cir. 2006). This argument again rests on the premise that Mahin was biased. In *Virgil*, the biased jurors gave unchallenged statements during *voir dire* that they were incapable of being fair and impartial. *Virgil*, 446 F.3d at 609-10. By contrast, the *voir dire* at Ducksworth's trial shows that Mahin was rehabilitated upon further questioning. Ducksworth has not shown that Mahin was a "biased" juror as in *Virgil*, and has not shown that the structural error standard applies.

---

[19]    Gordon testified that, in general, she relied on "body language," whether the venirepersons made "connections" with her, and whether the venirepersons spoke up and voiced their opinions (*id.* at 226-27).

Finally, under Section 2254, this Court's review on habeas is doubly deferential. The state habeas court's conclusion that Gordon was not constitutionally ineffective for failing to remove Mahin was not contrary to, or an unreasonable application of, clearly established Supreme Court law, nor was it an unreasonable determination of the facts in light of the state court record. *See* 28 U.S.C. § 2254(d)(1), (d)(2). Habeas relief is denied.

## IV. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. The petition for habeas corpus under 28 U.S.C. § 2254 (Dkt. 1) is **CONDITIONALLY GRANTED** as to Petitioner's claim that trial counsel was constitutionally ineffective for failure to request a jury instruction on the lesser included offense of robbery. Respondent must release Ducksworth from custody unless the State initiates retrial proceedings within 180 days from the date of final judgment in this Court.

2. Respondent's Motion for Summary Judgment (Dkt. 8) is **GRANTED** as to Petitioner's claim that trial counsel was constitutionally ineffective for failure to challenge juror Mahin.

3. A separate final judgment will issue. The Court's judgment is **STAYED** pending appeal.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Galveston, Texas, this 18th day of January, 2018.

George C. Hanks Jr.
United States District Judge